The **SANTA FE TRAIL TRANSPORTATION COMPANY, Plaintiff,**

v.

**Ennett J. PEOPLES et al., Defendants.**

No. 15197–4.

United States District Court
W. D. Missouri, W. D.

Oct. 12, 1967.

George L. Gordon, Sam D. Parker, J. W. R. Headley, Kansas City, Mo., Starr Thomas, C. G. Niebank, Jr., Robert R. Bateson, Chicago, Ill., for plaintiff.

Joseph N. Miniace, Kansas City, Mo., Alan M. Levy, Milwaukee, Wis., for defendants.

## MEMORANDUM AND ORDER GRANTING JUDGMENT FOR PLAINTIFF

ELMO B. HUNTER, District Judge.

On February 25, 1967, the Court called the above styled cause for trial on the sole issue remaining in the case, namely, whether plaintiff is entitled to damages from the Union for a breach of contract under § 301, Labor-Management Relations Act, 29 U.S.C. § 185. The parties were present by their counsel. Joint Exhibit 1 [1] was offered in evidence. The

1. Transcript of the proceedings before the Joint Area Committee.

parties stipulated that the issue is ready for decision on the record of the case and that no further evidence is necessary to a determination of the case.

On April 19, 1967, this Court entered its Memorandum and Order Granting Judgment for Plaintiff. Thereafter defendant International Teamsters Union filed its motion for new trial. In that motion defendant did not raise the question whether the International could be bound by action taken by the Joint State Committee. However, at the hearing set on the motion for new trial the International did take this position, and also the position that the subcommittee of the Joint State Committee was without authority to select Dr. Dunn, the independent physician, who in turn was to examine Peoples and to determine if Peoples was qualified to return to work as an over-the-road driver. On June 12, 1967, the Court set aside its order of April 19, 1967, and set down for an evidentiary hearing the sole issue of whether the two man subcommittee named in the decision of the Joint State Committee of July 1, 1964, had authority to select the independent physician.

■ On Friday, September 15, 1967, the evidentiary hearing in this matter was held. The plaintiff introduced evidence that on other occasions such a delegation had been made as in this case without objection from the International. The only evidence presented by the International is the Constitution of the International which has an article (XII) entitled "Strikes, Lockouts, Wage Scales, Disputes Over Jurisdiction" containing general language that no subordinate body shall purport to make the International a party to any collective bargaining or other agreement without the express written consent of the authorized officers of the International. On the basis of the evidence produced at the hearing the Court finds that the decision of the Joint State Committee to appoint a subcommittee to select the independent physician who was to make the determination under the terms of the Joint State Committee's decision was authorized.

■ Nor can the International successfully contend that it is not responsible for the actions of the Joint State Committee and the strike threat. The defendant International is a party to the National Freight Agreement and Central States Area Over-the-Road Supplemental Agreement which sets forth the grievance procedure and machinery followed in this case (See page 1 of the Agreement). The record demonstrates that Mr. Roy L. Williams is a member of the National Negotiating Committee, President of the Central States Drivers Council, a General Organizer employed by the International Union, and also a member of the very Joint State Committee with which this case is involved and a signatory on the agreement to select an independent physician to examine Peoples and to determine if Peoples was qualified to return to work as an over-the-road driver. Defendant International admits in paragraph 5 of its answer that under the terms of the above agreement it has a right to call a strike to compel compliance with a decision of the Joint Area Grievance Committee. The grievance procedure and machinery, and particularly the Joint State Committee, being a creature of the International Union, and it having participated therein, it cannot now take the position that it cannot be bound by the actions of such grievance committee.

The facts are undisputed. Only their legal effect is left for the Court's determination. Briefly stated, Ennett J. Peoples was employed by plaintiff as an over-the-road driver and was a member of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, hereinafter referred to as the Union. In January, 1964, Peoples was hospitalized with an illness diagnosed as a myocardial infarction. After his hospitalization and convalescence Peoples demanded to be reinstated as an over-the-road driver. Peoples presented a form from his personal physician stating he was physically quali-

fied to return to work. Peoples was thereafter referred to a physician retained by plaintiff. That physician refused to authorize Peoples' return to duty as a driver. Thereafter, Peoples brought a grievance seeking reinstatement.

The Central States Area Over-the-Road Motor Freight Agreement (which the parties agree is controlling) provides that this grievance is to be presented to the Joint State Committee. It was so presented and on July 1, 1964, that Committee met and made the following disposition of the case by unanimous vote:

> After hearing the facts as presented, the Committee finds that a sub-committee composed of George Chamblin for the employers and La Rue Moore for the Union will select an impartial heart specialist *to examine E. J. Peoples to determine if he is qualified to work as a road driver.* The impartial doctor will be given prior medical reports to review in connection with his examination. *This examination will be binding on the Co. & the Union.* (All emphasis ours.)

Article 43 of the Central States Agreement provides as follows:

> Where a Joint State Committee, by a majority vote, settles a dispute, no appeal may be taken to the Joint Area Committee. Such a decision shall be final and binding on both parties.

Plaintiff has alleged a breach of the agreement reached by the Joint State Committee on July 1, 1964, and a breach of that portion of Article 43 quoted above.

The record demonstrates that pursuant to the disposition of the Joint State Committee, the sub-committee selected Dr. Marvin Dunn. On August 24, 1964, Dr. Dunn submitted his report on E. J. Peoples to the members of the sub-committee. This two and a half page report states the findings of the doctor based upon his examination and upon the reports furnished to him by the sub-committee. Dr. Dunn therein states that it is his impression that Peoples has arteriosclerotic heart disease, that he has

experienced a myocardial infarction, and that Peoples has had an uncomplicated recovery from the myocardial infarction. Dr. Dunn goes on to state that he has little question that Peoples is physically capable of driving a tractor-truck. However, Dr. Dunn then points out that the revised safety regulations of the Interstate Commerce Commission do not permit any motor carrier to permit any person to drive if the person has an organic or functional disease likely to interfere with safe driving. Dr. Dunn states therein that the applicable committee of the American Medical Association has recommended that because some 20%· of the persons who have experienced acute myocardial infarctions are subject to sudden, unexpected death, such persons should not operate commercial or passenger vehicles. The closing sentence of the report states, "With these references as a guide I do not think that I can give approval for Mr. Peoples to return to work as an over-the-road motor freight operator."

At a meeting of the Joint State Committee on September 5, 1964, the Union asserted that Peoples was qualified and that the report so indicated. On that basis the three Union representatives voted for Peoples' reinstatement. Failing to have a majority, the Union and Peoples took the case to the Joint Area Committee over the protest of plaintiff. Plaintiff throughout has taken the position that the decision of the Joint State Committee to be bound by the determination of Dr. Dunn was the final disposition by the Joint State Committee and that the Union was not free to reject that determination because it was adverse to Peoples.

■ The Court is in agreement with plaintiff. The disposition of the case by the Joint State Committee, made unanimously on July 1, 1964, is clear. The members of the Committee unanimously agreed to be bound by the decision of an independent doctor on the matter of Peoples' reinstatement. That doctor reported "I do not think that I can give approval for Mr. Peoples to return to work as an over-the-road motor freight operator."

To take the position that Dr. Dunn's decision is that Peoples is to be reinstated is completely without reasonable basis. Before Judge Gibson and again before this Court the Union has taken the position that the factual basis upon which Dr. Dunn based his decision is not clear. Even if the basis for the decision were held to be ambiguous, and the Court makes no such finding, the Union had no right to disregard Dr. Dunn's decision and to "appeal" to the Joint Area Committee. If the Union believed the decision needed clarification it should have sought the same from Dr. Dunn. By disregarding Dr. Dunn's decision and instituting an "appeal" to the Joint Area Committee the Union breached the agreement of the Joint State Committee and also that portion of Article 43 of the Central States Agreement which provides that both parties are bound by a final decision of the Joint State Committee. Such action on the part of the Union is clearly an anticipatory breach by repudiation of the contract, and the fact that no strike actually occurred does not alter this fact.

The decision of the Joint Area Committee in no way alters the fact that the Union breached its agreement to be bound by the determination of Dr. Dunn. The facts of the case clearly demonstrate that the Union was not entitled under the Central States Agreement to "appeal" this matter. Nor was the Joint Area Committee authorized to hear the "appeal" since the Joint State Committee had previously made disposition of the case by unanimous vote, Article 43. The Union therefore will not be permitted in this proceeding to assert as justification for its actions the ruling of the Joint Area Committee on the purported appeal.

This case is clearly within the scope of 29 U.S.C. § 185. The agreement of representatives of the employer and union is binding on the principals, § 185(b). The contract of July 1, 1964, satisfies the provisions of § 185(a). The legislative history of the above statute indicates that it was to prevent such tactics as the Union is here pursuing that the statute was enacted, S.Rep. No. 105, 80th Cong., 1st Sess. p. 16.

Nor is this a case which must be remanded to the grievance procedure of the parties. Article 8, Section (a) states, "All grievances or questions of interpretation arising under this Master Agreement or Supplemental Agreements thereto shall be processed as set forth below." What is presented to the Court in this proceeding is not a grievance or question of interpretation arising under the agreements referred to in Article 8. The grievance was Peoples' claim for reinstatement. The Joint State Committee fully resolved that grievance when it agreed to be bound by the determination of Dr. Dunn. What the Court has before it is the Union's breach of the Joint State Committee contract. That contract is clear and the breach is clear. There is no authority requiring the Court to submit this breach of contract case to the parties' grievance procedures. Nor would it serve any useful purpose to so refer this matter. The cases cited by the Union do not contemplate a never ending cycle of arbitration. The decisions of the arbitrators need not be arbitrated.

29 U.S.C. § 185 provides that money damages may be recoverable in a breach of contract suit brought thereunder. See also 92 A.L.R. 2d 1232 on the recovery of money damages. The record demonstrates that the Union insisted, contrary to the July 1, 1964, agreement, that Peoples be reinstated or plaintiff would be faced with a strike. Plaintiff, according to the evidence, was faced with losing as much as $1,000 to $2,000 per day unless it took some appropriate action to mitigate this daily loss which would result upon strike. In order to avoid a strike (which Mr. R. V. Hinderliter, Assistant to Vice President of plaintiff, estimated would have resulted in a loss of profits of $1,000.00 to $2,000.00 per day and a permanent loss of customers) plaintiff continued to pay Peoples but did not permit him to work. The total amount paid to Peoples in order to avoid the strike was $8,087.24, and

it is that amount which plaintiff urges the Court to assess against the Union as damages for its breach of contract.

The principle of mitigation of damages is well recognized and the Court finds that an award for plaintiff in the amount of $8,087.24 is supported by reason and authority, 22 Am.Jur.2d, Damages, § 169, Nederlandsch Amerikaansche Stoomvaart Maatschappij v. Stevedores' & Longshoremen's Benev. Soc., 265 F. 397 (E.D.La. 1920). The Court finds that the sum of $8,087.24 paid out by plaintiff to mitigate damages was a reasonable sum necessarily expended to mitigate damages certain to result from the wrongful breach of the contract.

Therefore, the Court hereby orders judgment for plaintiff against the defendant Union in the amount of $8,087.24 and costs.

It is so ordered.